UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21603-CIV-GOLD/MCALILEY

SALAM JEANS LIMITED,

    Plaintiff/Counter-Defendant,

v.

FORTUNE SWIMWEAR, LLC, *et al.*,

    Defendants/Counter-Plaintiff.

_____/

**REPORT AND RECOMMENDATION ON FORTUNE
SWIMWEAR, LLC'S MOTION FOR FINAL DEFAULT JUDGMENT**

Pending before this Court is Fortune Swimwear, LLC's (Fortune) Notice of Compliance with Court Order and Motion for Default Final Judgment [DE 181], which was referred by the Honorable Alan S. Gold [DE 184]. Fortune requests that the Court enter final default judgment against Plaintiff/Counter-Defendant Salam Jeans Limited (Salam) in the total amount of $609,335.28, representing damages and prejudgment interest. Salam did not respond to the Motion. For the reasons that follow, I recommend that the Motion be granted.

**I.  Default Judgment**

On May 19, 2009, the Honorable Alan S. Gold granted Fortune's Motion to Strike Pleadings, to Dismiss, and for Entry of Default Judgment, dismissing Salam's claims against Fortune and directing the Clerk to enter default against Salam as to Fortune's counterclaim. [DE 177]. That Order set forth Salam's failure to participate in this litigation and comply with orders of the Court. Federal Rule of Civil Procedure 55(b) authorizes the Court to enter

default judgment upon motion by a party. Default judgment may be entered for "failure . . . to comply with [the Court's] orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). "The exercise of the authority is discretionary and is subject to review for abuse of discretion." *Id.* As set forth in the Court's May 19, 2009 Order, Salam failed to comply with the Order to Show Cause entered by Judge Gold on April 29, 2009, and other Orders entered by the Court. [DE 177]. On this record there is no question that Fortune is entitled to a judgment by default against Salam on its counterclaim for breach of contract.

This breach of contract case stems from a dispute between the parties over the sale of certain finished garments (the Goods). Under Florida law,[1] the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages. *Bland v. Freightliner LLC*, 206 F.Supp.2d 1202, 1210 (M.D. Fla. 2002) (citing *Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). "A material breach occurs only when an injured party has sustained a substantial injury due to the breach." *Id.* (citation omitted). A plaintiff may only recover if the damages are a proximate result of the material breach. *Chipman v. Chonin*, 597 So.2d 363, 364 (Fla. 3d DCA 1992) (citation omitted). "In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its

---

[1] In its counterclaim Fortune asserts that California law should apply to any dispute over its contract with Salam. [DE 24, Counterclaim ¶ 14]. This assertion is not a well-pleaded factual allegation that is deemed admitted by virtue of Salam's default. Instead, it is a bald legal assertion for which Fortune offers no supporting authority. On the contrary, Fortune has cited the Court to Florida case law both in its Motion for Entry of Default [DE 176], and this Motion for final default judgment [DE 181]. Accordingly, in this diversity case, Florida law applies in resolving the issues raised in the Motion.

obligations under the contract or a legal excuse for its nonperformance." *American Moisture Control, Inc. v. Dynamic Building Restoration, LLC*, No. 6:06-cv-1908-Orl-28KRS, 2008 WL 4107131, at * 3 (M.D. Fla. Sept. 2, 2008) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006)).

Fortune's counterclaim against Salam alleges: (1) that the parties had entered into a series of agreements whereby Salam agreed to sell the Goods to Fortune , (2) Salam breached those agreements by making late delivery of the Goods, that were defective and substandard, (3) as a result Fortune suffered damages, and (4) Fortune performed all of its obligations under the agreements except those that have been excused or discharged by virtue of Salam's actions. [DE 24]. I have reviewed the counterclaim and find that Fortune has stated a claim for breach of contract against Salam, taking all well-pleaded allegations in the counterclaim as admitted. The only remaining question is the amount of damages to which Fortune is entitled.

**II.    Damages**

Damages in a breach of contract action are meant "to place the injured party in the same position he or she would have been in had the breach not occurred." *Telemundo Network, Inc. v. Spanish Television Servs. Inc.,* 812 So.2d 461, 464 (Fla. 3d DCA 2002). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Kwasnik v. Charlee*

3

*Family Care Serv. of Central Florida, Inc.*, No. 6:08-cv-926-Orl-31KRS, 2009 WL 1607809, at * 3 (M.D. Fla. June 9, 2009) (citations omitted). When entering a final default judgment, "it is not necessary for the Court to hold a hearing if the damages are liquidated or ascertainable from documentary evidence or affidavits." *Shandong Airlines Co., Ltd. v. Capt, LLC*, 650 F.Supp.2d 1202, 1207 (M.D. Fla. 2009) (citing *Directv, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343-44 (M.D. Fla. 2003)).

Fortune seeks $471,832.00 in total damages representing Fortune's expected profits from the sale of the Goods ordered from Salam, the amount Fortune actually recovered by mitigating its losses through other sales, the cost of the Goods to Fortune, and Fortune's costs of repair. [DE 181, p. 2]. Fortune documents its damages claim through the affidavit of Ann Kennedy, Chief Financial Officer of Fortune. Ms. Kennedy avers the following:

(1) Fortune placed purchase orders for the Goods from Salam, and as they began to arrive substantially all of the Goods were defective. [DE 181-1, ¶ 4]. Salam's agent advised Fortune that Salam would accept whatever Fortune "charge[d] back" as a result of the defective Goods. [DE 181-1, ¶ 5 and Ex. A]. The agreed final terms for payment of the Goods was 10% to be paid 90 days after presentation of the Goods, and 90% to be paid only if and after Fortune approved the quality of the Goods. [DE 181-1, ¶ 6 and Ex. B]. Fortune inspected and repaired the Goods (incurring out of pocket expenses and costs), and provided Salam with an accounting and other supporting documentation. [DE 181-1, ¶ 7, 9]. Fortune never approved the quality of the Goods and, as a result, was not obligated to pay the

4

remaining 90%. [DE 181-1, ¶ 9].

(2) Fortune resold substantially all of the repaired Goods to Wal-Mart, Marmaxx, and a jobber, for the gross amount of $773,161.00. [DE 181-1, ¶ 8, 10]. Subtracting the cost of goods and manufacturing expenses ($208,341.00) and freight charges ($81,780.00), Fortune's net profit on the resale was $483,040.00. [DE 181-1, ¶ 10]. In comparison, had the Goods not been defective, total sales by Fortune to Wal-Mart pursuant to outstanding orders would have been $1,411,485.00. Subtracting the cost of goods and manufacturing expenses ($634,581.00) and freight charges ($81,780.00), Fortune's expected net profit on the sale to Wal-Mart would have been $695,124.00. [DE 181-1, ¶ 11]. Therefore, Fortune maintains that it sustained damages for lost profits in the amount of $212,084.00 (695,124.00 less 483,040.00). [DE 181-1, ¶ 13]. Additionally, in order to sell the defective Goods, Fortune incurred incidental damages (repair costs, inspection costs, shipping costs and related expenses) in the amount of $259,748.00. [DE 181-1, ¶ 12, Ex. C]. Fortune claims a total of $471,832.00 in damages, which represents $212,084.00 in lost profits and $259,748.00 in incidental damages. [DE 181-1, ¶ 13].

    **A.**    **Lost Profits**

Fortune seeks $212,084.00 in lost profit damages. In this diversity action, Florida law governs whether the damages sought by Fortune can be awarded.[2] Generally, under Florida

---

[2] In violation of Local Rule 7.1.A, Fortune failed to cite any authority that supports its entitlement to lost profits. Nevertheless, this Court has independently researched the issue and makes its recommendations accordingly.

law lost profits damages are recoverable. However, "lost profit damages, like all damages, cannot be speculative and must be proved with reasonable certainty." *Nebula Glass Int'l v. Reichhold, Inc.*, 454 F.3d 1203, 1213 (11th Cir. 2006) (citing *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So.2d 1348, 1350-51 (Fla. 1989); *Twyman v. Roell*, 123 Fla. 2, 166 So. 215, 218 (1936)). "Florida courts have often noted that proving lost profits damages is difficult, but by no means impossible." *Id.* To prove lost profits, a party must show "(1) that the defendant's action caused the damage and (2) there is some standard by which the amount of damages may be adequately determined." *Id.* at 1214 (citing *W.W. Gay*, 545 So.2d at 1350-51); *see also Qantum Communications Corp. v. Star Broadcasting., Inc.*, 491 F.Supp.2d 1123, 1130 (S.D. Fla. 2007).

By defaulting, Salam has admitted all well-pleaded allegations of liability, including that: (1) it knew that Fortune anticipated reselling the Goods at a profit to Wal-Mart, (2) in order for the Goods to be profitable on resale, the Goods needed to be of high quality, (3) the Goods were defective, and (4) as a result, Fortune was unable to fulfill the order to Wal-Mart and incurred various costs and canceled orders resulting in lost sales and profits. [DE 24, Counterclaim ¶¶ 8-9, 11-12]. With these allegations, Fortune has established that Salam's breach caused Fortune's lost profits.

Turning to the second part of the analysis, in seeking lost profits "a Florida plaintiff's proof of damages will be sufficient if it provides some evidence from which the amount of damages may be satisfactorily ascertained. Proof of the amount of damages need not

conform to any particular methodology, and exact proof of damages is not required." *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at *12 (S.D. Fla Oct. 31, 2007).

Fortune calculates its lost profits damages in the following way: had Salam not breached the contract, Fortune's profits on the resale would have been $695,124.00; Fortune's actual profits were $483,040.00; the difference of $212,084.00 is the amount Fortune seeks as lost profit damages. I note that Fortune has not provided independent documentary evidence to corroborate its figures, however courts may consider affidavits as sufficient evidence of damages. *See Shandong Airlines*, 650 F.Supp.2d at 1207. Ms. Kennedy's declaration is sufficiently detailed and specific as to allow this Court to adequately determine the amount of lost profit damages sustained by Fortune, thereby satisfying the second prong of the lost profit analysis under *Nebula*. Accordingly, after careful review of Ms. Kennedy's calculations, I conclude that Fortune is entitled to the full amount of lost profit damages sought: $212,084.00.

**B.   Incidental Damages**

Fortune also seeks $259,748.00 in incidental damages.[3] According to Fortune, in order to resell the defective Goods, it incurred repair costs, inspection costs, shipping costs and related expenses, and supports this claim through Ms. Kennedy's declaration and

---

[3] Again, in violation of Local Rule 7.1.A, Fortune failed to cite any authority that supports its claim of entitlement to incidental damages. I make the following recommendations based on this Court's independent research.

attached spreadsheet specifying the exact nature of the costs and expenses incurred. [*See* DE 181-1, ¶ 12 and Ex. C].

Incidental damages are available to an injured party in a breach of contract action under both Florida common law and the Florida UCC. *See Capitol Environmental Services, Inc. v. Earth Tech, Inc.*, No. 1D08-3016, 2009 WL 4110848, at *2-3, (Fla. 1st DCA Nov. 30, 2009) (citing Restatement (Second) of Contracts § 347, comment c); *Florida Mining & Materials Corp. v. Standard Gypsum Corp.*, 550 So.2d 47, 48 (Fla. 2d DCA 1989) (citing § 672.708, Fla. Stat. (1987)).

After reviewing Ms. Kennedy's declaration and the specific claims of the costs and expenses incurred in order to resell the defective Goods, I conclude that Fortune is entitled to a judgment for incidental damages in the full amount sought: $259,748.00.

**III.   Prejudgment Interest**

Under Florida law, two prerequisites are required for entry of an award of prejudgment interest: (1) out of pocket pecuniary loss, and (2) a fixed date of loss. *Specialized Transportation of Tampa Bay, Inc. v. Nestle Waters North America, Inc.*, No. 09-12807, 2009 WL 3601606, at * 8 (11th Cir. Nov. 3, 2009) (citing *Underhill Fancy Veal, Inc. v. Padot*, 677 So.2d 1387, 1380 (Fla. 1st DCA 1996)). Prejudgment interest is calculated at the statutory rate from the date of loss. *Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212, 215 (Fla. 1985). In a claim for breach of contract, the date of loss is the date the debt was due. *Specialized Transportation*, 2009 WL 3601606, at * 8.

Fortune argues that its losses were fixed in time and amount on August 2, 2006, the date that the last of the sales in mitigation were complete, and that the Court should calculate prejudgment interest as of that date. [DE 181, p. 4; 181-1, ¶ 8]. While Fortune does not provide the dates that it incurred the costs and expenses to resell the defective Goods that forms the basis of its incidental damages claim, the Court can infer that these damages must have been incurred before the last date of resale. Therefore, the last date that Fortune incurred damages would have been on August 2, 2006,[4] and Fortune is entitled to prejudgment interest from that date to the date of final judgment. *See Glover Distrib. Co., Inc. v. F.T.D.K., Inc.*, 816 So.2d 1207, 1213 (Fla. 5th DCA 2002) (awarding prejudgment interest from the latest possible date on which damages could have been suffered).

The statutory rate for 2006 was 9% per year (or .0002466 per day); 2007 was 11% per year (or .0003014 per day); 2008 was 11% per year (or .0003014 per day); 2009 was 8% per year (or .0002192 per day); and 2010 is 6% per year (or .0001644 per day).[5] I recommend that Fortune be awarded prejudgment interest at this rate.

## IV.  Recommendations

Based on the foregoing, the Court RECOMMENDS that Fortune Swimwear, LLC's Motion for Default Final Judgment [DE 181], be GRANTED and that a default judgment be

---

[4] Fortune does not provide independent documentary evidence of this date, therefore the Court bases its recommendation on Ms. Kennedy's declaration [DE 181-1, ¶ 8].

[5] *See* Florida Department of Financial Services, Statutory Interest Rates Pursuant to Section 55.03, Florida Statutes, available at www.myfloridacfo.com/aadir/interest.htm.

entered in favor of Fortune against Salam in the amount of $471,832.00 in damages, plus prejudgement interest at the statutory rate as detailed above.

**V.     Objections**

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable Alan S. Gold no later than **14 days** from the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 3rd day of March, 2010.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Alan S. Gold

All counsel of record

Salam Jeans Limited
c/o S. K. Buibul Ahmed
89 National Zoo Road
Mirpur, Dhaka 1216
Bangladesh